CRAWLEY, Judge,
dissenting.
I respectfully dissent. No reasonable view of the evidence supports the trial court’s judgment that Owens met his burden of proof under Ala.Code 1975, § 25-5-57(a)(6)a. That statute requires:
“For hernia resulting from injury by an accident arising out of and in the course of the employee’s employment, it must be definitely proven to the satisfaction of the court all of the following:
“1. That there was injury resulting in hernia.
“2. That the hernia appeared suddenly.
“3. That it was accompanied by pain.
“4. That the hernia immediately followed an accident.
“5. That the hernia did not exist prior to the accident for which compensation is claimed.”
The purpose of a special hernia statute such as § 25-5-57(a)(6)a. is to “ensur[e] causal connection between the employment and the hernia.” A. Larson, The Law of Workmen’s Compensation § 39.72 at 7-449, -50 (1991).
“The ultimate objective of the statute, which is to distinguish nonindustrial congenital hernias from those definitely produced by trauma or effort at work, is used by the courts to provide guidance in determining how short a time ‘immediate’ must be in the circumstances.”

Id.

Owens presented no evidence that the hernia appeared “suddenly” or that it “immediately followed an accident.” The undisputed evidence established that Owens received an injury on June 10, 1992, but that he was not diagnosed as having a hernia until July 28, 1993, over thirteen months later. A thirteen-month interval between injury and diagnosis means that the hernia was neither “sudden” nor “immediate.” See Metropolitan Dade County, Board of County Comm’rs v. Wyche, 383 So.2d 315 (Fla.Dist.Ct.App.1980) (hernia did not appear “suddenly” when discovered one year after accident); Travelers Ins. Co. v. Quibedeaux, 403 S.W.2d 826 (Tex.Civ.App.1966) (hernia was not “sudden” or “immediate” when symptoms appeared two or three months after accident); Frohman Gear Co. v. Fellows, 149 So.2d 557 (Fla.1963) (hernia not diagnosed until twelve months after injury did not appear “suddenly”).
Owens had five examinations by four different doctors, all of whom were specifically looking for, but did not find, a hernia. The notes from those five examinations reflect the following:
1. “Mike McIntyre, M.D. 6/11/92:
“HISTORY: This is a 40 year old gentleman that works at a lumber company. He states that he was picking up a very large piece of lumber yesterday and pulled something in the left groin area. He states that he went home last night and he felt better. This morning he was still a little bit tender but as he started to lift again he had severe pain in the left groin area.
*475 “PHYSICAL EXAM: He is very tender in the left groin. I feel no herniation at this point, but he is quite tender in that area....
“DIAGNOSIS: Groin strain. I am concerned about the possibility of a developing hernia in that area.”
2. “Steve Lovelady, M.D. 6/15/92:
“HISTORY: This is a 40 year old for reeheck of groin strain. The patient states he is some better but he still has a little soreness there.
“EXAM: There is no hernia. He is still a little tender in his left testicle, but there is no bulging or herniation noted.”
3. “Steve Lovelady, M.D. 6/17/92:
“HISTORY: This is a 40 year old from Moundville who works for Newton Lumber Company. He has a groin strain and he states that it is not getting any better.
“PHYSICAL EXAM: I have again reexamined him today and there is no evidence of herniation although he is very tender up in the left inguinal ring.
“PLAN: I am going to go ahead and add some antibiotics today to be sure that he is not getting an early epididymitis that may be causing some of this; but I still think it is purely a strain.
4. “Robert E. May, M.D. 10/02/92:
“HISTORY: This is a 41 year old workmen’s comp for Newton Lumber who comes in for recheck of groin strain. He was hurt initially on 6/11 and we saw him then. He states it is still sore, especially when he is bearing down and when he is lifting. He says that when he does a lot of lifting, he has some left testicular pain.
“EXAM: He is tender to the left abdominal wall over the left adnexa, but no masses or hernias are felt. However, because of his persistent symptoms, I am going to go ahead and get him to see a surgeon for evaluation.
“DIAGNOSIS: Abdominal wall strain; rule out hernia.
5. “Joseph C. Wallace, M.D.:
“I saw Mr. Owens in the office on October 5, 1992, referred to rule out a left inguinal hernia. By documentation, he had picked up a heavy 3 x 6 at work and hurt his left groin three to four months prior. This had improved with symptomatic treatment with NSAIA’s. I found no evidence of left inguinal hernia or right inguinal hernia, and advised him to continue medical treatment for left groin strain as above.”
The medical notes show that Owens suffered an injury at work and that the injury caused pain. They also show that Owens eventually developed a hernia. They do not show, however, that the hernia was either “sudden” or “immediate.” While I am not insensitive to the worker’s pain, our legislature has determined that pain is not sufficient to authorize relief under § 25-5-57(a)(6)a. A worker seeking compensation for a hernia “has the burden of showing a causal connection between the injury and his employment.” Egbert v. Book Press, 144 Vt. 367, 369, 477 A.2d 968, 969 (1984). In order to sustain his burden of proof, he must do more than show a mere “possibility of causation.” Id.
The trial court’s finding that “‘perhaps” the first four doctors did not locate the hernia because they did not have Owens strain or cough during their examinations constitutes pure speculation. Although the trial court stated that it was “giving all favorable presumptions to [Owens] as the law requires,” I believe that, instead, the trial court excused Owens from his burden of proof.
I would reverse the order of the trial court and remand for further proceedings.